# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------X
                                                 :
SABBY VOLATILITY WARRANT MASTER FUND,            :
LTD.,                                            :
                                                 :
                 Plaintiff,                      :
                                                 :
        v.                                       :        Civil Action No. 1:19-cv-10460
                                                 :
PARETEUM CORPORATION, ROBERT H. TURNER,          :        AMENDED COMPLAINT
EDWARD O'DONNELL, DENIS MCCARTHY,                :
VICTOR BOZZO, ROBERT LIPPERT, YVES VAN           :
SANTE, LUIS JIMENEZ-TUNON, and SQUAR             :
MILNER LLP,                                      :
                                                 :
                 Defendants.                     :
                                                 :
-------------------------------------------------------------------X
```

**LAX & NEVILLE LLP**

By:  ***/s/ Barry R. Lax***
     Barry R. Lax, Esq.
     Robert Miller, Esq.
     350 Fifth Avenue, Suite 4640
     New York, NY 10118
     Tel: (212) 696-1999
     *Attorneys for Plaintiff*

Plaintiff Sabby Volatility Warrant Master Fund, Ltd., for its Amended Complaint against Defendants Pareteum Corporation, Robert H. Turner, Edward O'Donnell, Denis McCarthy, Victor Bozzo, Robert Lippert, Yves Van Sante, Luis Jimenez-Tunon, and Squar Milner LLP alleges as follows:

## NATURE OF THE ACTION

1.     This is an action under Section 11 of the Securities Act of 1933 ("1933 Act") and for breach of contract and contractual indemnification arising from Pareteum's issuance and sale of registered securities to Plaintiff on September 20, 2019.  The securities were issued under a registration statement that contained untrue statements of material facts and omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.  Among other things, the registration statement, including prospectuses, incorporated annual and quarterly financial statements that overstated Pareteum's revenues by at least 50%.  On October 21, 2019, Pareteum issued a press release admitting to the overstatement, notifying investors that they could no longer rely upon its financial statements or other public filings, and warning that the restatement of revenues was preliminary and that additional restatements may follow.

2.     Defendants' conduct caused a steep decline in the value of Pareteum stock, causing substantial damage to Plaintiff.  Plaintiff seeks to recover its damages under the 1933 Act and has also brought claims for breach of contract and indemnification.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 77v, as the claims asserted herein arise under and pursuant to § 11 of the 1933 Act.

4.      Venue lies in this Court pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 77v.  The acts and conduct complained of herein occurred, in substantial part, in this District.

5.      The Defendants, directly and indirectly, have made use of the means or instruments of transportation or communication in interstate commerce, or of the mails in connection with the acts, practices and transactions alleged herein.

6.      The subject State-related claims herein, sounding in breach of contract and contractual indemnification, arise out of the same factual particulars and/or same transaction as the Federal-based claims herein, and this Court therefor has ancillary and/or pendent jurisdiction herein.

## PARTIES

7.      Plaintiff Sabby Volatility Warrant Master Fund, Ltd., is organized under the laws of the Cayman Islands.

8.      Defendant Pareteum Corporation is incorporated under the laws of Delaware with its principal executive offices located in New York, NY.  Pareteum's common stock trades on the NASDAQ exchange under the symbol "TEUM."

9.      Defendant Robert H. Turner was, at all relevant times, Executive Chairman and a Director and, during 2019, Chief Executive Officer of Defendant Pareteum Corporation.

10.     Defendant Edward O'Donnell was, at all relevant times, the Chief Financial Officer and a Director of Defendant Pareteum Corporation.

11.     Defendant Denis McCarthy was the Chief Operating Officer of Defendant Pareteum Corporation until October 9, 2019.

12.     Defendant Victor Bozzo was Chief Executive Officer and a Director of Defendant Pareteum Corporation as of the date the Registration Statement, as defined herein, was filed with the Securities and Exchange Commission.

13.     Robert Lippert was a Director of Defendant Pareteum Corporation as of the date the Registration Statement, as defined herein, was filed with the Securities and Exchange Commission.

14.     Yves van Sante was a Director of Defendant Pareteum Corporation as of the date the Registration Statement, as defined herein, was filed with the Securities and Exchange Commission.

15.     Luis Jimenez-Tunon was a Director of Defendant Pareteum Corporation as of the date the Registration Statement, as defined herein, was filed with the Securities and Exchange Commission.

16.     Defendant Squar Milner LLP[1] ("Squar Milner") is a certified public accounting and financial advisory firm headquartered in Orange County, California.  Squar Milner served as Pareteum's independent auditor since at least 2014, and specifically for Pareteum's 2017 and 2018 consolidated financial statements, both of which were included in Pareteum's 2018 10-K and the former of which was included by reference into Pareteum's November 30, 2018 Amended Registration Statement:

> The consolidated financial statements of the Company and subsidiaries as of and for the years ended December 31, 2017 and 2016 have been incorporated by reference in the registration statement in reliance on the reports of Squar Milner LLP, an independent registered public accounting firm, incorporated herein by reference, given on the authority of said firm as experts in auditing and accounting

---

[1] n/k/a Baker Tilly US, LLP.

Amended Registration Statement, at "Experts."  Pareteum's 2017 and 2018 consolidated financial statements were also included in the September 19, 2019 Securities Purchase Agreement ("SPA") the Company entered into with Plaintiff:

> Schedule 3.1(dd): The Company's accounting firm is set forth on Schedule 3.1(dd) of the Disclosure Schedules. To the knowledge and belief of the Company, such accounting firm (i) is a registered public accounting firm as required by the Exchange Act and (ii) shall express its opinion with respect to the financial statements to be included in the Company's Annual Report for the fiscal year ending December 31, 2019. Squar Milner LLP

SPA (attached hereto as Exhibit A).

## SUBSTANTIVE ALLEGATIONS

### Pareteum

17.    Pareteum describes itself as a cloud communications company.  It is listed on the NASDAQ under the symbol "TEUM."

### The Stock Purchase Agreement

18.    On September 20, 2019, Pareteum closed a $40 million direct public offering of common stock and warrants ("Offering") registered for sale under Pareteum's November 30, 2018 Amended Registration Statement, December 18, 2018 Prospectus, and September 20, 2019 Supplemental Prospectus (collectively "Registration Statement").  In its SEC filings, press releases and transaction documents, the company represented that the primary purpose of capital raised by the Offering was repayment of outstanding indebtedness to Post Road Group LLC, its senior debt holder.

19.    On September 19, 2019, Plaintiff and Pareteum entered into an SPA for the issuance and sale of securities to Plaintiff.

20.    Pursuant to the SPA and as part of the Offering, on September 20, 2019 Pareteum issued 9,375,000 shares of common stock, 9,375,000 5-year Series A Purchase Warrants, and

4,687,500 18-month Series B Purchase Warrants to Plaintiff.[2]  Each common share was bundled

with one Series A Purchase Warrant and one Series B Purchase Warrant and sold to Plaintiff as a

"Common Unit" at $1.76 per unit.  Plaintiff's total investment in the Offering was $16,500,000.

21.     The issuance and sale were "subject to the terms and conditions set forth in [the

SPA] and pursuant to an effective registration statement under the Securities Act of 1933."  Ex. A

at 1.  Section 1.1 of the SPA defines "Registration Statement" as "the effective registration

statement with Commission file No. 333-227912 which registers the sale of the Shares, the

Warrants and the Warrant Shares to the Purchasers."  SPA § 1.1.   In its Warranties and

Representations, Pareteum represented as follows:

> The Company has prepared and filed the Registration Statement in conformity with
> the requirements of the Securities Act, which became effective on December 18,
> 2018 (the "Effective Date"), including the Prospectus, and such amendments and
> supplements thereto as may have been required to the date of this Agreement… At
> the time the Registration Statement and any amendments thereto became effective,
> at the date of this Agreement and at the Closing Date, the Registration Statement
> and any amendments thereto conformed and will conform in all material respects
> to the requirements of the Securities Act and did not and will not contain any untrue
> statement of a material fact or omit to state any material fact required to be stated
> therein or necessary to make the statements therein not misleading…

SPA § 3.1(f).

22.     Section 1.1 of the SPA defines the Prospectus as "the final prospectus filed for the

Registration Statement" and Prospectus Supplement as "the Prospectus complying with Rule

424(b) of the Securities Act that is filed with the Commission and delivered by the Company to

each Purchaser at the Closing."  The Prospectus was filed with the SEC on December 18, 2018.

The Supplemental Prospectus was filed with the SEC on September 20, 2019.

---

[2] Each Series A Purchase Warrant is exercisable for one share of common stock at $2.25 per share.  Each
Series B Purchase Warrant is exercisable for one share of common stock at $1.84 per share.  The warrants
are not exercisable until March 24, 2020.

23.     The SPA was subject to, and incorporated by reference, the Prospectus and Supplemental Prospectus.   In its Warranties and Representations, Pareteum represented as follows:

> [T]he Prospectus and any amendments or supplements thereto, at the time the Prospectus or any amendment or supplement thereto was issued and at the Closing Date, conformed and will conform in all material respects to the requirements of the Securities Act and did not and will not contain an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

SPA § 3.1(f).

24.     In its Warranties and Representations, Pareteum represented as follows:

> SEC Reports; Financial Statements.  The Company has filed all reports, schedules, forms, statements and other documents required to be filed by the Company under the Securities Act and the Exchange Act, including pursuant to Section 13(a) or 15(d) thereof, for the two years preceding the date hereof (or such shorter period as the Company was required by law or regulation to file such material) (the foregoing materials, including the exhibits thereto and documents incorporated by reference therein, together with the Prospectus and the Prospectus Supplement, being collectively referred to herein as the "SEC Reports") on a timely basis or has received a valid extension of such time of filing and has filed any such SEC Reports prior to the expiration of any such extension.  As of their respective dates, the SEC Reports complied in all material respects with the requirements of the Securities Act and the Exchange Act, as applicable, and none of the SEC Reports, when filed, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading…The financial statements of the Company included in the SEC Reports comply in all material respects with applicable accounting requirements and the rules and regulations of the Commission with respect thereto as in effect at the time of filing. Such financial statements have been prepared in accordance with United States generally accepted accounting principles applied on a consistent basis during the periods involved ("GAAP"), except as may be otherwise specified in such financial statements or the notes thereto and except that unaudited financial statements may not contain all footnotes required by GAAP, and fairly present in all material respects the financial position of the Company and its consolidated Subsidiaries as of and for the dates thereof and the results of operations and cash flows for the periods then ended, subject, in the case of unaudited statements, to normal, immaterial, year-end audit adjustments.

SPA § 3.1(h).

25.     In its Warranties and Representations, Pareteum represented as follows:

Material Changes; Undisclosed Events, Liabilities or Developments.  Since the date of the latest audited financial statements included within the SEC Reports, except as set forth on Schedule 3.1(i), (i) there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect…Except for the issuance of the Securities contemplated by this Agreement or as set forth on Schedule 3.1(i), no event, liability, fact, circumstance, occurrence or development has occurred or exists or is reasonably expected to occur or exist with respect to the Company or its Subsidiaries or their respective businesses, prospects, properties, operations, assets or financial condition that would be required to be disclosed by the Company under applicable securities laws at the time this representation is made or deemed made that has not been publicly disclosed at least 1 Trading Day prior to the date that this representation is made.

SPA § 3.1(i).  A "Material Adverse Effect" is defined to include "(ii) a material adverse effect on the results of operations, assets, business, prospects or condition (financial or otherwise) of the Company and the Subsidiaries, taken as a whole."  *Id.* at § 3.1(b).

26.     Schedule 3.1(i) of the Disclosure Schedule annexed to the SPA represented as follows:

Schedule 3.1(i): Since the date of the latest audited financial statements included within the SEC Reports, except as set forth on Schedule 3.1(i), (i) there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect, (ii) the Company has not incurred any liabilities (contingent or otherwise) other than (A) trade payables and accrued expenses incurred in the ordinary course of business consistent with past practice and (B) liabilities not required to be reflected in the Company's financial statements pursuant to GAAP or disclosed in filings made with the Commission, (iii) the Company has not altered its method of accounting, (iv) the Company has not declared or made any dividend or distribution of cash or other property to its stockholders or purchased, redeemed or made any agreements to purchase or redeem any shares of its capital stock and (v) the Company has not issued any equity securities to any officer, director or Affiliate, except pursuant to existing Company stock option plans.  The Company does not have pending before the Commission any request for confidential treatment of information.  Except for the issuance of the Securities contemplated by this Agreement or as set forth on Schedule 3.1(i), no event, liability, fact, circumstance, occurrence or development has occurred or exists or is reasonably expected to occur or exist with respect to the Company or its Subsidiaries or their respective businesses, prospects, properties, operations, assets or financial condition that would be required to be disclosed by

the Company under applicable securities laws at the time this representation is made or deemed made that has not been publicly disclosed at least 1 Trading Day prior to the date that this representation is made.

SPA Disclosure Schedule 3.1(i).

27.     In its Warranties and Representations, Pareteum represented as follows:

Sarbanes-Oxley; Internal Accounting Controls. The Company and the Subsidiaries are in compliance with any and all applicable requirements of the Sarbanes-Oxley Act of 2002 that are effective as of the date hereof, and any and all applicable rules and regulations promulgated by the Commission thereunder that are effective as of the date hereof and as of the Closing Date. The Company and the Subsidiaries maintain a system of internal accounting controls sufficient to provide reasonable assurance that: (i) transactions are executed in accordance with management's general or specific authorizations, (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain asset accountability, (iii) access to assets is permitted only in accordance with management's general or specific authorization, and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences. The Company and the Subsidiaries have established disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the Company and the Subsidiaries and designed such disclosure controls and procedures to ensure that information required to be disclosed by the Company in the reports it files or submits under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the Commission's rules and forms. The Company's certifying officers have evaluated the effectiveness of the disclosure controls and procedures of the Company and the Subsidiaries as of the end of the period covered by the most recently filed periodic report under the Exchange Act (such date, the "Evaluation Date"). The Company presented in its most recently filed periodic report under the Exchange Act the conclusions of the certifying officers that the Company's disclosure controls and procedures based on their evaluations as of the Evaluation Date were not effective. Since the Evaluation Date, there have been no changes in the internal control over financial reporting (as such term is defined in the Exchange Act) of the Company and its Subsidiaries that have materially affected, or is reasonably likely to materially affect, the internal control over financial reporting of the Company and its Subsidiaries.

SPA § 3.1(s).

## Materially False and Misleading Statements

28.     Each of the Warranties and Representations contained in Subsections 3.1(f, h, i, s) and Disclosure Schedule 3.1(i) was materially false and misleading.  Beginning no later than March 18, 2019 and continuing through at least October 21, 2019, Pareteum repeatedly filed, affirmed and failed to disclose materially false and misleading financial statements:

- March 18, 2019 – 2018 Form 10-K stated annual revenue of $32.4 million

- May 10, 2019 – Q1 2019 Form 10-Q stated quarterly revenues of $23 million

- August 9, 2019 – Q2 2019 Form 10-Q stated quarterly revenues of $34.1 million

29.     The Supplemental Prospectus to the Registration Statement incorporated by reference the 2018 Form 10-K, Q1 2019 Form 10-Q and Q2 2019 Form 10-Q and "our financial statements and related notes thereto."

30.     At or around the date of each filing, Pareteum issued a press release touting its "rapidly growing" business.  On March 18, 2019, Pareteum announced, in relevant part:

**FULL YEAR 2018 FINANCIAL RESULTS:**

(Unless otherwise noted, all comparisons are made to full year of 2017)

- Revenues increased 139% to $32.4 million
- Adjusted EBITDA improved 199% year-over-year to $6.4 million
- Non-GAAP EPS of $0.09 cents compared to $0.05 cents for year ending 2017
- We ended the year with a $6.1 million cash balance and no secured debt

**KEY 2018 OPERATIONAL METRICS:**

- 36-month Contractual Revenue Backlog quadrupled to $615 million for the full year 2018, up from $147 million in 2017 with a conversion rate to revenue of 100%
- Connections increased 252% to 4,609,000 for the full year 2018, and grew 59% sequentially in the fourth quarter of 2018
- Fourth quarter average annualized revenue per employee of $415,000, an improvement of 78% year-over-year

**2019 FULL YEAR GUIDANCE:**

- We expect revenue to be between $105 million and $115 million for the full year of 2019. Adjusted EBITDA and Cash Flow, net of restructuring and acquisition costs will be positive for the year.

- We are expecting 2019 revenue growth in the range of 225% to 260% year-over-year, outpacing the market growth rate fivefold to be updated quarterly

31.     Further, in the March 18, 2019 2018 10-K, Pareteum disclosed that, throughout 2018, Pareteum had "material weaknesses in its internal control over financial reporting,…[such that its] disclosure controls and procedures were not effective as of December 31, 2018."

32.     Pareteum, Turner, O'Donnell, McCarthy and Bozzo tried to assuage investors' concerns over these material weaknesses that existed at the Company, attempting to paint as reliable the Company's reported financials.  As such, right after its 2018 Form 10-K was released, Pareteum stated:

> The material weakness did not result in any identified misstatements to the financial statements, and there were no changes to previously released financial results.
>
> * * *
>
> Squar Milner LLP, the Company's independent registered public accounting firm, expressed an unqualified opinion for the audit of our consolidated financial statements as of and for the year ended December 31, 2018….

33.     Pareteum, in its 2018 10-K, had also stated that its management had already been "implementing and continues to implement measures designed to ensure that control deficiencies contributing to the material weakness [were] remediated" and that the "remediation actions to the Company's internal controls over financial reporting include a thorough review and documentation of all processes involved in our financial reporting…."  To that end, in its 2018 10-K Pareteum

also stated that those remediation actions would likely "remediate the material weakness," and that the remediation process as a whole would "be completed prior to the end of fiscal 2019."

34.    Immediately following that assertion as to when it foresaw its remediation process being completed, Pareteum, in its 2018 10-K, reproduced Squar Milner's March 18, 2019 unqualified opinion that, despite Pareteum's failure to "maintain[] effective internal control over financial reporting as of December 31, 2018," "[t]hese material weaknesses were considered in determining the nature, timing and extent of audit tests applied in our audit of the 2018 financial statements, and this report does not affect our report dated March 18, 2019,"

35.    Even after reporting the previous weaknesses that affected its 2018 finance reporting, Pareteum also stated in its 2018 10-K that "[t]here have been no changes in our internal control over financial reporting during the quarter ended December 31, 2018 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting". Pareteum thus admitted that it had not materially changed its internal control over financial reporting *at all*, even after discovering its weaknesses, and Squar Milner, meanwhile, stated that its report highlighting those same material weaknesses would somehow *not* affect its March 18, 2019 report.

36.    On May 7, 2019, Pareteum announced, in relevant part:

We are very pleased with our strong first quarter results, delivering 460% revenue growth in Q1 2019 compared to Q1 2018. Pareteum's core business, pre-acquisitions, has grown 33% over the prior quarter," commented Hal Turner, Pareteum's Founder, Executive Chairman and Principal Executive Officer. "We are proud of the significant business transformation we have achieved over the past few years. Pareteum is a fast-growing and profitable SaaS and communications service provider. Our software and platform solutions are unique in the market, our global TEUM is executing, we are well positioned to capture the large market opportunity, and we are committed to our mission to *connect every person and every(thing)*™.

**FIRST QUARTER 2019 FINANCIAL RESULTS:**

(Unless otherwise noted, all comparisons are made to the first quarter of 2018)

- Total revenues increased 460% to $23 million
- Adjusted EBITDA increased 1,723% to $5.2 million
- Non-GAAP EPS of $0.02 cents
- Artilium and iPass financials are consolidated and accretive in Pareteum's first quarter results
- Net Dollar-based expansion rate represented 144% growth
- Increase in total assets from $27.2 million at March 31, 2018 to $236.9 million at March 31, 2019
- Cash balance of $10.7 million

**2019 FULL YEAR GUIDANCE:**

- We expect revenue to be between $115 million and $125 million for the full year of 2019. Adjusted EBITDA and Cash Flow, net of restructuring and acquisition costs will be positive for the year.

- We are expecting 2019 revenue growth in the range of 255% to 285% year-over-year, outpacing the market growth rate fivefold to be updated quarterly.

37.    On August 6, 2019, Pareteum announced in relevant part:

Pareteum achieved several significant milestones in the second quarter: We grew revenue 48% from the previous quarter, delivered EBITDA positive results two full quarters ahead of analyst expectations and our annualized revenue run rate eclipsed $136 million," commented Pareteum's Founder, Chairman & CEO Hal Turner. "We are in the early innings of a remarkable growth story. We have added numerous customers to our platform in 2019, and these customers, as well as those in our deployment pipeline, will be the drivers of our continued growth.  We are only at the beginning of our mission to *connect every person and every(thing)*™.

**SECOND-QUARTER 2019 FINANCIAL RESULTS YEAR-OVER-YEAR:**

- Total revenue increased 469% to $34.1 million
- Income from Operations totaled $159,000
- EBITDA increased 466% to $3.4 million
- Adjusted EBITDA increased 369% to $6.1 million
- Non-GAAP EPS of $0.03 (Non-GAAP EPS of $0.05 for the 6 months ending June 30, 2019)
- Net Dollar-based expansion rate represented 151% growth
- Increase in total assets from $33.1 million at June 30, 2018 to $246.9 million at June 30, 2019

**2019 FULL-YEAR GUIDANCE:**

13

- We expect revenue to be between $120 million and $130 million for the full year of 2019, an increase from the previous forecast of between $115 million and $125 million. Adjusted EBITDA and Cash Flow, net of restructuring and acquisition costs, will be positive for the year.
- We expect 2019 revenue growth in the range of 270% to 301% year-over-year, outpacing the market growth rate by fivefold, and to be updated quarterly.

38.    Each of these statements to the public, also contained in Pareteum's Forms 8K, was materially false and misleading.

39.    Additionally, the May 10, Q-1 2019 10-Q contained the following statement:

In light of the material weakness described below, we performed additional analysis and other post-closing procedures to ensure our financial statements are prepared in accordance with generally accepted accounting principles.

* * *

We also continue to develop certain remediation steps to address the material weakness discussed above to improve our assessment of internal control over financial reporting. As of March 31, 2019, these efforts are ongoing.

We are committed to *maintaining a strong internal control environment* and believe that these remediation actions will represent significant improvements in our controls.

The August 9, 2019 Q-2 2019 10-Q contained substantially the same statements as the Q-1 2019 10-Q.

40.    Turner and O'Donnell signed and certified the 2018 10-K and Q-1 2019 and Q-2 2019 10-Qs, while Bozzo also signed the 2018 10-K.

41.    The aforementioned statements made by Pareteum, Turner, O'Donnell and Bozzo regarding the Company's 2018-Q-2 2019 GAAP compliance and internal controls, the reliability of its financial statements in spite of the discovered material weaknesses, that the "material weakness did not result in any identified misstatements to the financial statements, and there were no changes to previously released financial results," that Squar Milner had "expressed an unqualified opinion," that the Company was taking "remediation steps" to remedy the material

weaknesses, that the entire remediation process was slated to "be completed prior to the end of fiscal 2019," and that the Company was "committed to maintaining a strong internal control environment," were all statements which were materially false and certainly misleading when they were made, and which were known to be false or which were recklessly disregarded as such at the time that the statements were made.  Those material weaknesses ultimately resulted in misstatements and the remediation process proved insufficient and it was not even completed "prior to the end of fiscal 2019."  On October 22, 2019, when it disclosed a pending restatement (the "Restatement Release"), Pareteum finally admitted that it had "prematurely or inaccurately recognized revenue" during first half of the 2019 fiscal year.  Those errors in revenue reported were expected to impact accounts receivable, revenue, operating income, net loss, and should not rely on the financial statements.

42.    On October 21, 2019, Pareteum issued a press release disclosing that it had overstated revenues for 2018 and the first half of 2019 by at least $9 million and $24 million respectively:

> Pareteum Corporation (Nasdaq: TEUM) today announced that the Company will restate its previously issued consolidated financial statements as of and for the full year ended December 31, 2018, and interim periods ended March 31, 2019 and June 30, 2019. This decision was approved by the Company's Board of Directors upon the recommendation of the Company's Audit Committee, and after consultation with management and the Company's independent registered public accounting firm.
>
> Investors should no longer rely upon the Company's previously released financial statements for the time periods cited above. Similarly, related press releases, earnings releases, and investor communications describing the Company's financial statements for these periods should no longer be relied upon.
>
> The decision to restate these financial statements is based on the Company's conclusion that certain revenues recognized during 2018 and 2019 should not have been recorded during that period. For certain customer transactions, the Company may have prematurely or inaccurately recognized revenue. These restatements should not impact historical cash or cash equivalents based upon the current review.

15

At the present time, the restatements are expected to impact Revenue, Cost of Service, Operating Income, Net Loss, Accounts Receivable and other Balance Sheet line items.  While the Company's analysis is still underway, the Company currently estimates the revenue impact for the full year 2018 to be a reduction of approximately $9 million. For the first half of 2019, the Company currently estimates the revenue impact to be a reduction of approximately $24 million.

At this time, the Company has not fully completed its review and the expected financial impact of the restatement described above is preliminary and subject to change. The Company cannot predict the aggregate amount of revenue that will ultimately be restated, whether additional periods beyond those referenced above will be affected, and the final outcome or timing of the Company's filing of restated financial statements for the affected annual and quarterly periods. Until the full magnitude of these transactions is analyzed and understood, the Company cannot provide forward guidance, and expects financial results for the second half and full year 2019 will be materially below current analysts' estimates.

Pareteum cannot at this time estimate when the restatement will be completed. The Company will continue to diligently pursue completion of the restatement and intends to make its upcoming 2019 quarterly filings as soon as reasonably practical.

43.     Neither the SPA, including the Disclosure Schedule which set forth Squar Milner as Pareteum's accounting firm, nor the Registration Statement and the financial statements incorporated therein, disclosed that the Company had significantly overstated revenues across two fiscal years by systematically recognizing revenue it did not have.

44.     Between September 20, 2019 and the date of this filing, Pareteum's stock price has never reached the $1.76 per share purchase price or its 52-week average of $2.80 per share.  As of the date of this filing, it trades at $0.44 per share as a direct result of the materially false and misleading statements contained in the Registration Statement.  Plaintiff has suffered damages likely to be in the millions of dollars.

### **Individual Defendants**

45.     Defendant Denis McCarthy was purportedly responsible for preparing and maintaining Pareteum's financial statements until Pareteum terminated him on October 9, 2019.

46.     Defendants Turner and O'Donnell signed the Registration Statement and certified the financial statements and Forms 10-K and 10-Q.  In the Q-2 2019 10-Q, Turner certified as follows:

1.     I have reviewed this quarterly report on Form 10-Q of Pareteum Corporation.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of a quarterly report) that has

materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

47.      Two months later, Pareteum announced it had overstated Q-1 and Q-2 2019 revenue by at least $24 million.

48.      Defendants Turner, O'Donnell, and McCarthy, and each of them, were directly responsible for filing a Registration Statement that contained untrue statements of material facts and omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

49.      Defendants Victor Bozzo, Robert Lippert, Yves van Sante, and Luis Jimenez-Tunon, as Directors of Pareteum, signed the Registration Statement.

### Squar Milner

50.      Defendant Squar Milner issued a March 18, 2019 Audit Report, which was included in Pareteum's 2018 10-K and which contained statements regarding the Company's fiscal year 2018 revenue and financial statement reporting, in which it issued an unqualified opinion certifying that the Company's financial statements fairly provided its financial position and were prepared in accordance with GAAP:

Report of Independent Registered Public Accounting Firm

To the Shareholders and the Board of Directors of Pareteum Corporation

Opinion on the Internal Control Over Financial Reporting

We have audited Pareteum Corporation's and its subsidiaries (the Company) internal control over financial reporting as of December 31, 2018, based on criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission in 2013. *In our opinion, because of the effect of the material weaknesses described below on the achievement of the objectives of the control criteria, the Company has not maintained effective internal control over financial reporting as of December 31, 2018,* based on criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission in 2013 ("COSO").

\* \* \*

*These material weaknesses were considered in determining the nature, timing and extent of audit tests applied in our audit of the 2018 financial statements, and this report does not affect our report dated March 18, 2019.*

Basis for Opinion

\* \* \*

We conducted our audit in accordance with the standards of the PCAOB. . . .We believe that our audit provides a reasonable basis for our opinion.

\s\ Squar Milner LLP
Los Angeles, California
March 18, 2019

(Emphasis added.)

51.     Pareteum incorporated its 2018 10-K, the financial statements contained therein regarding its 2018 reported revenues and realized revenue growth rates, and the Audit Report into its September 20, 2019 Supplemental Prospectus, stating:

The consolidated financial statements as of December 31, 2018…incorporated in this prospectus by reference from the Pareteum Corporation Annual Report on Form 10-K for the year ended December 31, 2018 have been audited by Squar Milner LLP, an independent registered public accounting firm, as stated in their reports thereon (which report expresses an unqualified opinion for the audit of our consolidated financial statements and a qualified opinion on the effectiveness of our internal controls over financial reporting), incorporated herein by reference, and have been incorporated in this Prospectus and Registration Statement in reliance upon such reports and upon the authority of such firm as experts in accounting and auditing.

52.     Pareteum's 2018 10-K and its financial statements were each materially false and misleading, as the Company itself admitted in its Restatement Release that the reported revenue and realized revenue growth figures for these periods were exaggerated and inaccurate when made.

53.     Squar Milner, as Pareteum's independent auditor since 2014, owed a duty to the Company's investors to independently confirm the validity of its representations contained in its 2018 10-K.  Squar Milner directly breached this duty by not discovering or otherwise reporting the Company's exaggerated and inaccurate reported revenues and revenue growth figures, leaving investors to rely on the Company's false financial statements.  Having by then served several years in the capacity of Pareteum's independent auditor, Squar Milner should reasonably have been aware of all of the aforementioned issues with the Company's financial statements by reason of its intimate knowledge of the Company's business and finances, the sheer fact that its accounts receivables ballooned from just $1,954,495 in Q-1 2018 to $15,361,594 in Q-4 2018, and the fact that other analysts and market commentators' publicly disclosed reports in the months immediately leading up to the Offering emphasizing these issues and raising still others about the quality and reliability of the Company's financial statements.  What is more, Squar Milner's Audit Report also contained misleading facts and assessments, such as Pareteum's exaggerated and inaccurate reported revenues and revenue growth figures and that the Company's financial statements evenly and reliably presented its financial position and were prepared in accordance with GAAP, and omitted necessary facts such as that the Company did not have adequate controls.

# CAUSES OF ACTION

### Count I
### Violations of Section 11 of the Securities Act, 15 U.S.C. § 77k
### (Individual Defendants)

54.     Plaintiff repeats and incorporates each and every allegation of this Complaint as if fully set forth herein.

55.     This Cause of Action is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k.  As to Count I, Plaintiff does not allege that Defendants had scienter or fraudulent intent.

56.     The Registration Statement was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

57.     As registrant and issuer of stock sold in the Offering, Pareteum is strictly liable to Plaintiff for the misstatements and omissions in the Registration Statement.

58.     The individual Defendants are liable pursuant to 15 U.S.C. § 77k(a)(1-2, 4).

59.     None of the individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

60.     Plaintiff entered the SPA and purchased Pareteum shares and warrants registered by the Registration Statement.

61.     At the time of its purchase of Pareteum shares and warrants, Plaintiff was without knowledge that certain statements of material fact in the Registration Statement were untrue or misleading and that certain material facts were omitted.

62.     Less than one year had elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which the initial complaint was based to the time that Plaintiff filed the initial complaint, on November 11, 2019.  Less than three years had elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff filed the initial complaint.

63.     As a result of the significant decline in the value Pareteum stock caused by Defendants' violations, Plaintiff has sustained damages.

**Count II**
**Violations of Section 11 of the Securities Act, 15 U.S.C. § 77k**
**(Squar Milner)**

64.     Plaintiff repeats and incorporates each and every allegation of this Complaint as if fully set forth herein

65.     This Cause of Action is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k.  As to Count II, Plaintiff does not allege that Defendants had scienter or fraudulent intent.

66.     The Registration Statement was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

67.     As registrant and issuer of stock sold in the Offering, Pareteum is strictly liable to Plaintiff for the misstatements and omissions in the Registration Statement.

68.     Defendant Squar Milner is liable pursuant to 15 U.S.C. § 77k(a)(4).

69.     Defendant Squar Milner was Pareteum's independent auditor for its 2017 and 2018 consolidated financial statements, both of which were included in Pareteum's 2018 10-K and the former of which was included by reference into Pareteum's November 30, 2018 Amended

Registration Statement, as well as with respect to the September 19, 2019 SPA it entered into with Plaintiff. Squar Milner certified that Pareteum's materially false and misleading financial statements evenly and accurately presented the Company's financial position as of December 31, 2017 and December 31, 2018 and that they were prepared in accordance with GAAP. Squar Milner also falsely represented that it conducted its audits or reviews in accordance with PCAOB standards, which the Restatement Release clearly revealed that it did not.

70. Plaintiff entered the SPA and purchased Pareteum shares and warrants registered by the Registration Statement.

71. At the time of its purchase of Pareteum shares and warrants, Plaintiff was without knowledge that certain statements of material fact in the Registration Statement were untrue or misleading and that certain material facts were omitted.

72. Less than one year had elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which the initial complaint was based to the time that Plaintiff filed the initial complaint, on November 11, 2019. Less than three years had elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff filed the initial complaint. Any applicable statute of limitations has been tolled.

73. As a result of the significant decline in the value Pareteum stock caused by Defendants' violations, Plaintiff has sustained damages.

**Count III**
**Breach of Contract**
**(Pareteum)**

74. Plaintiff repeats and incorporates each and every allegation of this Complaint as if fully set forth herein.

75.    The subject State-related claim herein, sounding in breach of contract, arises out of the same factual particulars and/or same transaction as the Federal-based claims herein, and this Court therefor has ancillary and/or pendent jurisdiction herein.

76.    Pareteum and Plaintiff entered the SPA on September 19, 2019, pursuant to which Pareteum made certain express representations and warranties upon which Plaintiff was entitled to rely, including setting forth that Squar Milner would be the Company's accounting firm.

77.    Pareteum's representations and warranties were in numerous respects set forth herein materially false.

78.    Pareteum is therefore in material breach of the SPA and Plaintiff has been damaged thereby.

79.    Plaintiff is entitled to recover monetary damages and/or to rescission of the SPA.

**Count IV**
**Contractual Indemnification**
**(Pareteum)**

80.    Plaintiff repeats and incorporates each and every allegation of this Complaint as if fully set forth herein.

81.    The subject State-related claim herein, sounding in contractual indemnification, arises out of the same factual particulars and/or same transaction as the Federal-based claims herein, and this Court therefor has ancillary and/or pendent jurisdiction herein.

82.    The SPA provides as follows:

Indemnification of Purchasers.    Subject to the provisions of this Section 4.8, the Company will indemnify and hold each Purchaser and its directors, officers, shareholders, members, partners, employees and agents (and any other Persons with a functionally equivalent role of a Person holding such titles notwithstanding a lack of such title or any other title), each Person who controls such Purchaser (within the meaning of Section 15 of the Securities Act and Section 20 of the Exchange Act), and the directors, officers, shareholders, agents, members, partners or employees (and any other Persons with a functionally equivalent role of a Person

24

holding such titles notwithstanding a lack of such title or any other title) of such controlling persons (each, a "Purchaser Party") harmless from any and all losses, liabilities, obligations, claims, contingencies, damages, costs and expenses, including all judgments, amounts paid in settlements, court costs and reasonable attorneys' fees and costs of investigation that any such Purchaser Party may suffer or incur as a result of or relating to (a) any breach of any of the representations, warranties, covenants or agreements made by the Company in this Agreement or in the other Transaction Documents…

SPA § 4.8.

83.  Plaintiff is therefore entitled to indemnification by Pareteum of, among other things, its losses resulting from Pareteum's breaches of its representations and warranties and its costs, expenses and attorneys' fees in this litigation.

## RELIEF

Based on the foregoing, Plaintiff respectfully requests judgment against Defendants Pareteum Corporation, Robert H. Turner, Edward O'Donnell, Denis McCarthy, Victor Bozzo, Robert Lippert, Yves Van Sante, Luis Jimenez-Tunon and Squar Milner LLP providing for:

a.  Monetary damages in an amount to be proven at the trial and/or rescission of the SPA as against Pareteum;

b.  Monetary damages in an amount to be proven at trial as against the individual Defendants and Squar Milner;

c.  Indemnification by Pareteum of, among other things, its losses resulting from Pareteum's breaches of its representations and warranties and its costs, expenses and attorneys' fees in this litigation; and

d.  For such other relief as this Court deems just, equitable and proper.

Dated:      New York, New York          **LAX & NEVILLE LLP**
            November 1, 2021

                                  By:   ***/s/ Barry R. Lax***
                                        Barry R. Lax, Esq.
                                        Robert Miller, Esq.
                                        350 Fifth Avenue, Suite 4640
                                        New York, NY 10118
                                        Tel: (212) 696-1999
                                        *Attorneys for Plaintiff*

25